UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PMP – ROMULUS, INC.,

      Plaintiff/Counterclaim Defendant,

                                    Case No. 2:23-cv-10822

v.                                  Honorable Linda V. Parker

VALYRIAN MACHINE, LLC,
KRIS SURCECK

      Defendants/Counterclaim Plaintiffs.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF/COUNTERCLAIM DEFENDANT'S MOTION TO DISMISS DEFENDANTS/COUNTER PLAINTIFFS' FIRST AMENDED COUNTER-COMPLAINT (ECF No. 37)

This matter is before the Court on Plaintiff/Counterclaim Defendant PMP – Romulus, Inc. ("PMP")'s motion to dismiss Defendants/Counterclaim Plaintiffs Valyrian Machine, LLC ("Valyrian") and Kris Surcek's ("Surcek") (collectively "Defendants/Counterclaim Plaintiffs") First Amended Counter Complaint ("FACC") pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 37.) Defendants/Counterclaim Plaintiffs filed a response and PMP filed a reply. (ECF Nos. 40, 42.)

Finding the facts and legal arguments adequately presented in the parties' filings, the Court is dispensing with oral argument pursuant to Eastern District of

Michigan Local Rule 7.1(f).  For the following reasons, PMP's motion to dismiss is granted in part and denied in part.

## I.    FACTUAL AND PROCEDURAL HISTORY

Surcek was employed by PMP's predecessor, Future Tool and Machine, Inc., for over twenty years as an IT professional.  PMP acquired Future Tool in a stock purchase agreement and Surcek accepted employment with the new company and signed an employment agreement on January 24, 2022.

Surcek resigned later that year and formed his own company, Valyrian Machine, LLC to compete with PMP in the marketplace.  PMP alleges, however, that on the final days of Surcek's employment, he inserted several USB drives into his computer and downloaded key pieces of information belonging to PMP and ran a computer cleaning software.  PMP further alleges that Surcek stole a variety of materials, including trade secrets in the form of confidential pricing information, which, it argues, would give a competitor an edge in a highly competitive marketplace.

On April 11, 2023, PMP filed this lawsuit alleging: (I) misappropriation of trade secrets against all defendants; (II) breach of contract against Surcek; (III) breach of duty of good faith and fair dealing against Surcek; (IV) tortious

interference against all defendants; (V) common law unfair competition against all defendants; and (VI) conversion against all defendants.  (ECF No. 1.)[1]

On September 8, 2023, PMP filed a motion for preliminary injunction. (ECF No. 16.)  The Court granted the motion, in part, finding that PMP had a likelihood of success on the merits of its first claim – misappropriation of trade secrets.  (*See* ECF No. 23 at PageID. 1201 (alteration added) ("[I]t appears that Surcek disclosed PMP's confidential pricing strategy to compete with PMP. As a result, PMP has a strong likelihood of success on the merits of its misappropriation of trade secrets claim.").)  The Court enjoined Defendants/Counterclaim Plaintiffs from using PMP's trade secrets to conduct their business.  (*Id.* at PageID. 1205.)

On February 15, 2024, Defendants/Counterclaim Plaintiffs filed their First Amended Counter Complaint ("FACC").  (ECF No. 34.)  They allege that PMP made defamatory statements and conspired to tortiously interfere with their business relationships.  (*Id.*)

Specifically, Defendants/Counterclaim Plaintiffs allege the following defamatory statements: (1) on November 22, 2022, Tony Konopka, an employee of

---

[1] PMP's complaint also included a seventh count for preliminary and permanent injunctive relief.  (*See* ECF No. 1 at PageID. 75.)  A preliminary injunction is a remedy not a substantive cause of action.  *See, e.g., Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008) (noting that "[a] preliminary injunction is an extraordinary remedy," awardable only upon proof of likelihood of success on the merits of a substantive claim).

PMP, announced to other employees of PMP that "Surcek stole information from PMP, was using PMP pricing as he provided a quote almost exactly $100 less than PMP's quote, and that he could not have done so without knowing PMP's quote information," (*see id.* 34 at ¶ 39); (2) in or about February 2023 Sue Coutts, an employee of PMP's, was warned by Craig Dillon ("Dillon")[2], a managing partner of PMP's parent company, Covington, that she should not work for Valyrian or Surcek because they stole PMP's property (*see id.* at ¶ 46); (3) Sue Coutts was also warned by Larry Franzel, PMP's former owner who returned to work for PMP, that she might not have a job to come back to once Valyrian is out of business (*see id.* at ¶ 47); (4) at an unspecified time, Larry Franzel began contacting Defendants/Counterclaim Plaintiffs' employees and telling them that: (a) Defendants/Counterclaim Plaintiffs' stole PMP's confidential information to operate its business and has improperly solicited PMP's customers; and (b) they will be going out of business soon (*see id.* at ¶ 48); (5) at an unspecified time, Larry Franzel made statements to Defendants/Counterclaim Plaintiffs' customers Systrand and Humanetics that they stole PMP's confidential business information to operate its business and have improperly solicited and stolen PMP's customers

---

[2] The FACC refers to this person as Craig Dillon, while PMP's motion to dismiss refers to them as Crain Dillon.  (*Compare* ECF No. 34 ¶ 46 *with* ECF No. 37 at PageID. 1574.) For purposes of this opinion, the Court will refer to them as "Dillon."

(*see id.* at ¶ 49); (6) on May 15, 2023, Larry Franzel made statements to Defendants/Counterclaim Plaintiffs' customer Systrand that they stole PMP's confidential business information, are using PMP's confidential business information to operate its business, and have improperly solicited and stolen PMP's customers, resulting in Systrand ending its relationship with Defendants/Counterclaim Plaintiffs (*see id.* at ¶¶ 50, 54); (7) on October 27, 2023, Olivia Dickie, PMP's employee, stated to Sue Coutts, Debbie Cooper, and Dan Jasper that Defendants/Counterclaim Plaintiffs: (a) stole PMP's confidential data; (b) will be out of business by the summer of 2024; and (c) that PMP will continue its lawsuit against them at all costs due to the backing of PMP's parent company, Covington (*see id.* at ¶ 51); and (8) on or about June 2023, Defendants/Counterclaim Plaintiffs were notified by Pete Huben, owner of A&A Calibration, that John Roberts, an employee of PMP, made false statements about Surcek and his partner James Pelletier while making a delivery to one of their customers earlier in the month of June (*see id.* at ¶¶ 52-53).  In total, eleven allegedly defamatory statements were made.

Additionally, Defendants/Counterclaim Plaintiffs allege the following instances of tortious interference and conspiracy: (1) Tony Konopka and Larry Franzel conspired to solicit their employees to return to work for PMP by publishing defamatory statements to their customers that Valyrian would be out of

business soon (*see id.* at ¶¶ 41-42); and (2) Larry Franzel attempted to "entrap" Defendants/Counterclaim Plaintiffs by calling Surcek and Pelletier to tell them how proud he was that they had started Valyrian and sent them potential customers for possible work (*see id.* at ¶ 43-44).

The FACC asserts the following causes of action: (I) tortious interference with a business relationship; (II) business defamation; (III) defamation; and (IV) civil conspiracy.  (*See id.* at PageID. 1384-88.)  PMP moves to dismiss all counts of the FACC.  (ECF No. 37.)

<u>Parties' Arguments</u>

i.   <u>PMP's Arguments</u>

In opposition to Defendants/Counterclaim Plaintiffs' defamation claims, PMP argues: (1) the substantial truth doctrine precludes their defamation claims (*see id.* at PageID. 1579-81); (2) statements of opinion or predictions of the future cannot be proven true or untrue, therefore they are not defamatory (*see id.* at PageID. 1581, 1587, 1588); and (3) Michigan's one-year statute of limitations bars any defamatory statements made in November 2022 (*see id.* at PageID. 1582). Importantly, as it relates to the "substantial truth doctrine," PMP argues that "this Court's Preliminary Injunction Order in and of itself," and "Mr. Surcek's sworn admissions establish as a matter of law the challenged statements . . . are substantially true."  (*Id.* at PageID. 1586-87.)

6

In opposition to Defendants/Counterclaim Plaintiffs' tortious interference claims, PMP argues: (1) since their defamation claims fail, their related tortious interference claims fail (*see id.* at PageID. 1590-91); and (2) independent of the related defamation claims, portions of the tortious interference claims fail as a matter of law. (*See id.* at PageID. 1591-93.)

Lastly, PMP argues that if the tortious interference and defamation claims fail, the civil conspiracy claim must fail as a matter of law. (*Id.* at PageID. 1593.)

ii.   Defendants/Counterclaim Plaintiffs' Arguments

Defendants/Counterclaim Plaintiffs argue: (1) Michigan's three-year statute of limitation is applicable to their claims (*see* ECF No. 40 at PageID. 1638-39); (2) there has been no jury verdict or ruling that they misappropriated or used PMP's trade secrets, therefore the defamatory statements are not by definition, "actually true," or "substantially true," and are "provably false," (*see id* at PageID. 1640); (3) contrary to PMP's statement, Surcek's own testimony did not admit that he or Valyrian disclosed PMP's trade secrets (*see id.* at PageID. 1640-41); (4) it is substantially untrue that they improperly solicited and stole PMP's customers (*see id.* at PageID. 1641-42); (5) PMP's argument that statements about future events are not actionable and are distinguishable from the caselaw it cites (*see id.* at PageID. 1642); (6) PMP's argument that a tortious interference claims fails with a defamation claim is not supported by caselaw (*see id.* at PageID. 1643); and (7)

7

Defendants/Counterclaim Plaintiffs' defamation and tortious interference claims should not be dismissed, therefore, its claim for civil conspiracy should similarly not be dismissed.  (*Id.* at PageID. 1644.)

## II.    LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The

plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

In addition to these general principles, the Sixth Circuit has emphasized that because the statute of limitations is an affirmative defense, a 12(b)(6) motion to dismiss "is generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations." *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). Yet there are exceptions to this general rule, including "[i]f the allegations, for example, show that relief is barred by the applicable statute of limitations." *Jones v. Bock*, 549 U.S. 199, 215 (2007) (citing Fed. R. Civ. P. 8(c)).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to

dismiss to one for summary judgment.  *See* Fed. R. Civ. P 12(d).  However,

"[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the

[c]omplaint and any exhibits attached thereto, public records, items appearing in

the record of the case and exhibits attached to [the] defendant's motion to dismiss,

so long as they are referred to in the [c]omplaint and are central to the claims

contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430

(6th Cir. 2008).  The court may take judicial notice only "of facts which are not

subject to reasonable dispute."  *Jones v. Cincinnati*, 521 F.3d 555, 562 (6th Cir.

2008) (quoting *Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. 2005)).

## III.   LEGAL ANALYSIS

i.   <u>Defamation Claims</u>

Counts II and III assert claims for defamation and business defamation,

respectively.  (*See* ECF No. 34.)  However, as identified above, within these two

Counts, Defendants/Counterclaim Plaintiffs allege the following acts of

defamation: (1) Tony Konopka's announcement to other employees in November

2022; (2) Dillon's statements to Sue Coutts in February 2023; (3) Larry Franzel's

statements to Sue Coutts, also in February 2023; (4) Larry Franzel's statements to

Systrand and Humanetics at an unspecified time; (5) Larry Franzel's statements to

Valyrian's employees at an unspecified time; (6) Larry Franzel's statements to

Systrand in May 2023; (7) Olivia Dickie's statements to Sue Coutts, Debbie

Cooper, and Dan Jasper in October 2023; and (8) John Robert's statements to

PMP's customer Pete Huben in June 2023.

Defamation, under Michigan law, requires proof of the following:

1) a false and defamatory statement concerning the [claimant], 2) an unprivileged communication to a third party, 3) fault amounting to at least negligence on the part of the publisher, and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication.

*Nichols v. Moore*, 477 F.3d 396, 399 (6th Cir. 2007) (alteration added)

(citing *Rouch v. Enquirer & News*, 487 N.W.2d 205, 211 (Mich. 1992)).  A

corporation may assert a defamation action if "the matter tends to prejudice it in

the conduct of its business or to deter others from dealing with it."  *Northland*

*Wheels Roller Skating Ctr., Inc. v. Detroit Free Press, Inc.*, 539 N.W.2d 774, 780

(Mich. Ct. App. 1995) (quoting *Heritage Optical Ctr., Inc. v. Levine*, 359 N.W.2d

210, 213 (Mich. Ct. App. 1984)).

a.  <u>Statute of Limitations</u>

Michigan has a general three-year statute of limitations for personal injury

claims.  *Forrester v. Clarenceville Sch. Dist.*, 537 F. Supp. 3d 944, 951 (E.D.

Mich. 2021) (citing Mich. Comp. Laws. § 600.5805(2)); *see also* Mich. Comp.

Laws. § 600.5827 (alteration added) ("[A] claim accrues at the time the wrong

upon which the claim is based was done regardless of the time when damage

results.").  However, "[t]he statute of limitations in Michigan for claims of libel or

defamation is one year." *Nichols v. Moore*, 334 F. Supp. 2d 944, 948 (E.D. Mich. 2004) (alteration added) (citing Mich. Comp. Laws §§ 600.5805(1), (11)), *aff'd by*, 477 F.3d 396 (6th Cir. 2007).

Defendants/Counterclaim Plaintiffs filed their FACC on February 15, 2024. (ECF No. 34.)  Thus, the statutory period for defamation claims would be from February 15, 2023, to February 15, 2024.  Tony Konopka's alleged act of defamation in November 2022 is the only alleged act of defamation that does not fall within Michigan's one-year statute of limitations period.[3]

They argue that the Court should apply the three-year statute of limitations to the alleged act of defamation because the facts alleged in the FACC can support both a defamation claim and a tortious interference with a business relationship claim and cite *Kollenberg v. Ramirez*, 339 N.W.2d 176 (Mich. Ct. App. 1983) for support.  (ECF No. 40 at PageID. 1638-39.)

In *Kollenberg*, the Michigan Court of Appeals held that "the three-year period of limitation applie[s]," when a "plaintiff ha[s] alleged the necessary elements of a tortious interference with an economic relationship even though that interference was allegedly caused by a defamatory statement."  *Kollenberg*, 339

---

[3] Defendants/Counterclaim Plaintiffs raised two other acts of alleged defamation in the form of statements made by Larry Franzel to their employees and customers, at unspecified times, however, PMP does not argue that these alleged acts occurred outside of the statutory period.  (ECF No. 34 ¶¶ 48-49.)

N.W.2d at 180 (alterations added) (citing *Wilkerson v. Calo*, 300 N.W.2d 658

(1980)).  The elements of tortious interference with an economic relationship are:

> (i) the existence of a valid business relationship or expectancy; (ii) knowledge of the relationship or expectancy on the part of the defendant; (iii) intentional interference causing or inducing a termination of the relationship or expectancy; and (iv) resultant actual damage.

*Saab Auto. AB v. Gen. Motors Co.*, 770 F.3d 436, 440 (6th Cir. 2014) (citing

*Cedroni Assocs., Inc. v. Tomblinson, Harburn Assocs., Architects & Planners, Inc.*,

821 N.W.2d 1, 3 (Mich. 2012)).  The appellate court also held that "the three-year

period of limitation applie[s] . . . where plaintiff's allegations could support either

an action for defamation or for an injurious falsehood." *Kollenberg*, 339 N.W.2d at

180 (alterations added) (citing *Wilkerson v. Calo*, 300 N.W.2d 658 (1980)).[4]

In both instances however, the court found that the tortious interference

claim, or the injurious falsehood claim, were not derivative of the defamation

---

[4] The elements of a claim for an injurious falsehood are:

> (1) that the defendant published a false statement to a third party knowing that statement to be false (or acting in reckless disregard for its truth or falsity); (2) that the defendant knew, or should have known, that this false publication would likely result in pecuniary loss or in harm to interest of the plaintiff having a pecuniary value; and (3) that the plaintiff suffered special damages as a result.

*Neshewat v. Salem*, 173 F.3d 357, 364 (6th Cir. 1999) (citing *Knollenberg*,

339 N.W.2d at 179; Restatement (Second) of Torts, § 623A (1977)).

claim, but were independent therefrom, as each defamatory statement met the individual elements of the separate claims and applied the three-year statute of limitations for the independent claim. *See id.* (applying three-year statute of limitations "where plaintiff's allegations could support either an action for defamation or for an injurious falsehood"); *see also Wilkerson*, 300 N.W.2d at 660 (alteration added) ("[A]ctions alleging tortious interference with economic relations are subject to the three-year statute of limitations of M.C.L. § 600.5805(8) . . . even though the unlawful interference was caused by defamatory statements.").

Defendants/Counterclaim Plaintiffs argue that Tony Konopka's alleged statements to other PMP employees meet the elements of Count I – tortious interference with a business relationship, and should be given the three-year statute of limitations.  However, their FACC does not identify the alleged statements as the alleged act of defamation as a basis for that claim.  (*See* ECF No. 34 ¶¶ 56-67.) The FACC alleges other acts of defamation to support this claim but omits Tony Konopka's alleged statement.  (*See id.*)  Further, they do not explain, and it is unclear how Tony Konopka, an employee of PMP, making an allegedly defamatory statement to other employees of PMP, would meet the above-identified elements of a tortious interference with business relationship claim.

The Court will analyze the FACC as it is plead, which does not allege these statements as an act supporting a tortious interference with a business relationship claim.  It is clear from the FACC that Tony Konopka's allegedly defamatory statement is independent from the tortious interference claim, therefore, it will not be given the three-year statute of limitations.  Moreover, Defendants/Counterclaim Plaintiffs fail to establish how Tony Konopka's alleged statement would meet the elements of a tortious interference claim that would avail them of the extended three-year statute of limitations.  Therefore, Tony Konopka's alleged statement, made in November 2022, is outside of the statutory period and must be dismissed.

  b.  The Substantial Truth Doctrine

Of the ten allegedly defamatory statements remaining, six allege that Defendants/Counterclaim Plaintiffs stole PMP's confidential information (*see* ECF No. 34 ¶¶ 46, 48-53), three allege that they will go out of business (*see id.* at ¶¶ 47, 48, 51), and one alleges that PMP will continue the lawsuit due to the backing of its parent company (*see id.* at ¶ 51).

PMP argues, in opposition to the six allegedly defamatory statements that Defendants/Counterclaim Plaintiffs stole their confidential information, that they are protected by the substantial truth doctrine.  (ECF No. 37 at PageID. 1579-81.) "Substantial truth is an absolute defense to a defamation claim." *Werme v. Mortg. Ctr. LLC*, 764 F. App'x 521, 523 (6th Cir. 2019) (alteration omitted) (citing

15

*Collins v. Detroit Free Press, Inc.*, 627 N.W.2d 5, 9 (Mich. Ct. App. 2001)).  The

Supreme Court explained in *Masson v. New Yorker Magazine*:

> The common law of libel takes but one approach to the question of
> falsity, regardless of the form of the communication. . . . It overlooks
> minor inaccuracies and concentrates upon the substantial truth. . . . The
> essence of that inquiry, however, remains the same whether the burden
> rests upon plaintiff or defendant. Minor inaccuracies do not amount to
> falsity so long as 'the substance, the gist, the sting, of the libelous
> charge be justified.'. . . Put another way, the statement is not considered
> false unless it 'would have a different effect on the mind of the reader
> from that which the pleaded truth would have produced.'

501 U.S. 496, 516-17 (1991) (internal citations omitted); *see also Nichols*,

396 F. Supp. 2d at 787 (internal citations and alterations omitted) ("The Court

finds that 'truth' means substantial truth, as the Michigan Court of Appeals has set

forth if the gist, the sting of the statement is substantially true, the defendant is not

liable.").

While the Sixth Circuit has held that "there is no reason not to grant a

motion to dismiss where the undisputed facts conclusively establish an affirmative

defense as a matter of law," *see Hensely Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613

(6th Cir. 2009) (citation omitted), the Court cannot, at this early stage, establish

what is true, to determine whether PMP's allegedly defamatory statements are

"substantially true."

While the Court found, for purposes of the preliminary injunction, that PMP

had a likelihood of success on the merits of its misappropriation of trade secrets

claim, this does not render the issue one of undisputed facts ripe for adjudication based on this defense.  The parties currently dispute who disclosed the confidential information that serves as the basis for the defamation claims.  (*Compare* ECF No. 37 at PageID. 1582 ("Based on Mr. Surcek's own sworn deposition testimony . . . the challenged statements about Valyrian or Mr. Surcek stealing PMP's confidential information are substantially true," *with* ECF No. 40 at PageID. 1640-41 (alteration added) ("[I]n reviewing the actual deposition transcript, it was testified that Mahar, a former client of PMP and current client of Valyrian, disclosed PMP's pricing information. There is no admission from Surcek that he or Valyrian disclosed PMP's trade secrets at any time.")).

At this early stage, the record is not sufficient for the Court to make a ruling on whether the alleged defamatory statements are "substantially true," as the Court, and the parties, are unable to determine what the actual truth is to determine if the gist or sting of the allegedly defamatory statements are "substantially true."  For these reasons, the Court will not consider PMP's "substantial truth" defense.  PMP asserts no other argument for dismissal of these claims.  As a result, these six statements will not be dismissed.

     c. <u>Statements of Opinion and the Future</u>

The four remaining statements contain three statements related to Defendants/Counterclaim Plaintiffs' ability to remain in business and one

17

statement about whether PMP will continue the lawsuit.  Specifically, the FACC

alleges the statements are as follows: (1) "[Sue Coutts] might not have a job to

come back to at PMP once Valyrian was out of business," (*see* ECF No. 34 at ¶ 47

(alteration added)); (2) "Valyrian[] . . . is going to be out of business soon," (*see id.*

at ¶ 48 (alteration added); (3) "Valyrian . . . will be out of business by the summer

of 2024," (*see id.* at ¶ 51); and (4) "PMP will continue its lawsuit against Surcek

and Valyrian at all costs due to the financial backing of its parent company

Covington."  (*Id.*)  They argue that these statements are actionable but provide no

caselaw in support of their argument.  (*See* ECF No. 40 at PageID. 1642.)

"To be considered defamatory, statements must assert facts that are provable

as false." *Ghanam v. Does*, 845 N.W.2d 128, 143 (Mich. Ct. App. 2014) (internal

citation omitted).  A statement of opinion "may be defamatory when it implies

assertions of objective facts."  *Smith v. Anonymous Joint Enter.*, 793 N.W.2d 533,

548 (Mich. Ct. App. 2010).  However, "rhetorical hyperbole" or mere

exaggerations "that cannot be interpreted as stating actual facts" cannot serve as

the basis for a defamation claim.  *Ghanam*, 845 N.W.2d at 143.

The Supreme Court has declined to create a specific exception to defamation

claims for statements of opinions, reasoning that "such an exception was

unnecessary because the *Bresler-Letter Carriers-Falwell* line of cases 'provides

protection for statements that cannot 'reasonably [be] interpreted as stating actual

18

facts' about an individual.'" *Jolliff v. N.L.R.B.*, 513 F.3d 600, 610 (6th Cir. 2008) (alteration in original) (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990)).

In *Jolliff*, the Sixth Circuit created the following framework for ascertaining whether a statement is protected hyperbole or is capable of carrying defamatory meaning:

> (1) The common usage or meaning of the allegedly defamatory words themselves, whether they are commonly understood to be loose, figurative, or hyperbolic words;
> (2) The degree to which the statements are verifiable, whether the statement is objectively capable of proof or disproof;
> (3) The immediate context in which the statement occurs; and
> (4) The broader social context into which the statement fits.

*Id.* at 611-12.

First, unlike the allegedly defamatory statements regarding Surcek's alleged theft, the parties do not dispute the content of these statements. Second, the statements appear to be either: (1) PMP's employee's opinions regarding the financial wellbeing of Valyrian; or (2) statements of PMP's plans for the future of this litigation. Applying the test above, both types of statements fail the second factor, whether the statements are objectively capable of proof or disproof as neither the Court nor the parties can accurately prove or disprove the future. For these reasons, the four remaining statements must be disregarded as they are not capable of sustaining a defamation claim.

19

In total, of the eleven allegedly defamatory statements, only six can support Defendants/Counterclaim Plaintiffs' defamation claims.

ii.   Tortious Interference Claim

As stated above, the elements of tortious interference with a business relationship claim are:

> (i) the existence of a valid business relationship or expectancy; (ii) knowledge of the relationship or expectancy on the part of the defendant; (iii) intentional interference causing or inducing a termination of the relationship or expectancy; and (iv) resultant actual damage.
> *Saab Auto. AB*, 770 F.3d at 440.

PMP first argues that Defendants/Counterclaim Plaintiffs' defamation claim must fail, therefore, the tortious interference claim must fail.  (ECF No. 37 at PageID. 1590.)  Alternatively, PMP argues that the "entrapment attempts" by Larry Franzel sending Surcek emails and text messages with potential customers to call for possible work, as alleged in the FACC, fail to state a claim as Defendants/Counterclaim Plaintiffs never acted upon them and neither: (1) caused or induced a termination of a relationship or expectancy; or (2) resulted in damages to them.  (*Id.* at PageID. 1592.)  PMP similarly argues that any statements to Defendants/Counterclaim Plaintiffs' employees cannot give rise to a tortious interference claim as none of their employees stopped working for them.  (*Id.* at PageID. 1592-93.)

Defendants/Counterclaim Plaintiffs oppose PMP's argument but do not cite caselaw in support of their opposition.  (ECF No. 40 at PageID. 1643.)  Of the following four statements or actions in the FACC alleging a tortious interference claim: (1) Larry Franzel's statement to Systrand (*see* ECF No. 34 ¶¶ 57-60); (2) Larry Franzel's "entrapment attempts," (*see id.* ¶¶ 44, 46-48, 61); (3) Olivia Dickie's statements (*see id.* ¶ 62); and (4) John Roberts' statement (*see id.* ¶ 63), only one meets all of the elements to satisfy this claim—Larry Franzel's alleged statement to Defendants/Counterclaim Plaintiffs' customer Systrand, resulting in Systrand ceasing its relationship with them.  (*See id.* at ¶¶ 57-60.)

The FACC adequately alleges that Defendants/Counterclaim Plaintiffs had a business relationship with Systrand (*see id.* at ¶ 57), PMP was aware of the relationship (*see id.* ¶ 58), Larry Franzel, on behalf of PMP, interfered with the relationship by making defamatory statements (*see id.* ¶ 59), which resulted in actual damages (*see id.* ¶ 60).  The other alleged statements or acts fail to allege the fourth element, actual damages.  As a result, only this statement will survive as the other actions identified in the FACC fail to support a claim for tortious interference.

iii.   <u>Civil Conspiracy Claim</u>

The elements of civil conspiracy under Michigan law are: (1) a concerted action; (2) by a combination of two or more persons; (3) to accomplish an unlawful

purpose; or (4) a lawful purpose by unlawful means.  *Nehls v. Hillsdale Coll.*, 65 F.

App'x 984, 991 (6th Cir. 2003) (quoting *Mays v. Three Rivers Rubber Corp.*, 352

N.W.2d 339, 341 (Mich. Ct. App. 1984)).  A claim for civil conspiracy accrues

when all the elements of the cause of action have occurred and the plaintiff knew

or should have known of the occurrence.  *Id.*

Defendants/Counterclaim Plaintiffs allege that Tony Konopka and Larry

Franzel formed a conspiracy to publish defamatory statements that Valyrian would

be out of business soon and did so in order to have employees stop working for

them and return to working for PMP.  (ECF No. 34 at ¶¶ 40-42.)

In further support of its argument for dismissal of this claim, PMP asserts

that if the tortious interference and defamation claims must be dismissed, the civil

conspiracy claim must also be dismissed.  (ECF No. 37 at PageID. 1593.)  That

would be true as "a conspiracy claim is only actionable if the underlying conduct

the [parties] are accused of is also actionable. In the context of a suit for damages,

civil wrongs (*i.e.,* torts) are actionable."  *Detroit Will Breathe v. City of Detroit*,

524 F. Supp. 3d 704, 710 (E.D. Mich. 2021) (alteration added).  However, the

claims have not been dismissed.

Defendants/Counterclaim Plaintiffs have adequately alleged that there was a

concerted action, by two people, Larry Franzel and Tony Konopka, to achieve a

lawful purpose, having employees leave them to return to work for PMP, by an

unlawful means, publishing defamatory statements.  In essence, the conduct underlying the tortious interference claim also gives rise to the civil conspiracy claim.  As a result, Defendants/Counterclaim Plaintiffs have not failed to state a claim for which relief can be granted.  Therefore, this claim will not be dismissed.

## IV.   CONCLUSION

There are eleven statements that form the basis of Defendants/Counterclaim Plaintiffs' four claims.  Five of them are not actionable as one was made outside of the statute of limitations and the remaining four state either opinions or the prospect of future events.  The remaining six statements serve as a basis for Defendants/Counterclaim Plaintiffs' defamation claims and one of the six statements also serves as a basis for their tortious interference claim.  Lastly, the tortious interference claim serves as the basis for the civil conspiracy claim.  Accordingly,

**IT IS HEREBY ORDERED** that PMP's motion to dismiss (ECF No. 40) is **GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that within fourteen (14) days of this opinion, Defendants/Counterclaim Plaintiffs shall file a Second Amended Counter Complaint consistent with this opinion.

s/ Linda V. Parker_____
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: August 2, 2024